UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| BRANDON B. DREWRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:14-cv-00392-GZS |
| | ) |
| CORRECT CARE SOLUTIONS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDED DECISION**

In this action, Plaintiff alleges deliberate indifference by Defendants in connection with their provision of prison medical care. The matter is before the Court on the Motion to Dismiss of the Correct Care Solutions Defendants (ECF No. 25); Plaintiff's Renewed Motion to Amend (ECF No. 33); Plaintiff's "Amended – Corrected Complaint" (ECF No. 44); Plaintiff's Supplement to Complaint (ECF No. 68); Plaintiff's Motion for Injunctive Relief (ECF No. 75); and Plaintiff's Motion to Supplement Pleading (ECF No. 84).

Following a review of the record and after consideration of the parties' arguments, I recommend that the Court grant in part and deny in part the Motion to Dismiss of the Correct Care Solutions Defendants (ECF No. 25); grant in part and deny in part Plaintiff's Renewed Motion to Amend (ECF No. 33); deny Plaintiff's "Amended–Corrected Complaint" (ECF No. 44); grant Plaintiff's "Supplemental Pleadings" (ECF No. 68); deny Plaintiff's Motion for Injunctive Relief (ECF No. 75); and grant Plaintiff's "Supplemental Pleading" (ECF No. 84).[1]

---

[1] Although it is within the magistrate judge's authority to decide a motion to amend, *Maurice v. State Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 9 n.2 (1st Cir. 2000), because the motions here relate at least in part to Defendants' motion to dismiss and a preliminary screening review under 28 U.S.C. §§ 1915 and 1915A, both of which are addressed in this recommended decision, I concluded that it was appropriate to issue a recommended decision on the motions, to afford the Court, in the event a party objects to this recommended decision, the opportunity to apply the same standard of review for each of the recommended determinations herein.

**BACKGROUND**

The facts set forth herein are derived from Plaintiff's Complaint, which facts are deemed true when evaluating the Motion to Dismiss.[2] *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

*Parties*

Plaintiff is an inmate at the Maine State Prison. Defendants consist of Correct Care Solutions (CCS), with which the State contracts to provide medical services at the prison, and certain individuals employed by Correct Care Solutions, identified by Plaintiff as follows:[3] Elisabeth Lamson, Health Services Administrator; Robert Clinton, Regional Medical Director; Deborah Hill, Registered Nurse; Dr. Hockersmith; and Dr. Stockwell.

*HHT*

Plaintiff has hereditary hemorrhagic telangiectasia (HHT), a condition that causes frequent severe nosebleeds. CCS staff members have referred Plaintiff to private health care providers, including Dr. Robert Dixon, for treatment of the condition. CCS has also recommended that Plaintiff undergo the "Young's procedure" to treat his HHT, a procedure by which the patient's nostrils are surgically closed. When Plaintiff objected to the proposal, Physician Assistant "Farra" scheduled him for a psychological consult.

Plaintiff repeatedly filed grievances based on his contention that CCS failed to treat the condition. Plaintiff's grievance activity started in May 2013 or perhaps earlier. In September 2013, and again in March 2014, Plaintiff received treatment by a surgeon who performed

---

[2] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

[3] Plaintiff alleged in his original complaint that he was unable to identify additional intended defendants.

Plaintiff's "second and third YAG procedures."[4] On one occasion, the provider cauterized vessels in the left nostril when Plaintiff presented for treatment of his right nostril. (PageID # 13.) The provider advised Plaintiff that it was likely he would require two or three YAG procedures annually to manage his nosebleeds. Plaintiff asserts that Defendant Lamson was sarcastic in her response when he alleged in a grievance that he had not received treatment on his right nostril. (PageID ## 13 – 14.)

In July 2014, Plaintiff received a disciplinary charge for causing a nosebleed (disorderly behavior) and was fined $50. (PageID ## 16 – 17.) Plaintiff filed a Rule 80C motion in state court challenging the charge. (PageID # 19.)

Although Plaintiff presently has a prescription for Bacitracin ointment, Plaintiff maintains that he does not receive it timely. (*Id.*) CCS nurses at times have provided Plaintiff with single application packets of Bacitracin. (PageID # 19.)

*Staph*

Plaintiff alleges that he also has experienced outbreaks of Staphylococcus aureus, which present as bleeding rashes or sores on his skin. In 2008, Plaintiff received a course of oral antibiotics in connection with sores that appeared on the back of his head and neck. (PageID # 20.) Subsequently, Plaintiff was provided with skin lotion, which "solved the problem responsible for the 'staph infections'." (PageID # 21.) For approximately three years, Plaintiff had no further skin infections. In 2011, when CCS began as the contract provider at the Maine State Prison CCS canceled Plaintiff's orders for, inter alia, Lubriskin lotion. (PageID ## 21 – 22.) Plaintiff filed multiple grievances regarding the change in his treatment, but was told to purchase the lotion from the canteen, complete a sick call request, and pay $5.00 for any associated care. (PageID # 22.)

---

[4] The YAG procedure involves laser cauterization of veins in the nose to stop or reduce bleeding.

Plaintiff asserts that his condition is a chronic care matter that should not require payment of fees for sick call and that he should receive lotion without payment. (PageID ## 22 – 23.)

In August 2014, Plaintiff was seen by Dr. Webster due to a severe nosebleed. Plaintiff contends that he was experiencing an outbreak of staph infection at the time, but Dr. Webster would not acknowledge or treat the alleged staph infection. (PageID ## 5 – 6.) Following that incident, Plaintiff has had fifteen or more infected sores, some of which ooze. (PageID ## 24 – 25.) Dr. Stockwell advised Plaintiff not to scratch his skin. (PageID # 30.)

*Cold sores*

In April 2014, Plaintiff developed painful cold sores on his mouth. CCS staff members advised him to complete a sick call slip and pay $5.00 to be seen by medical personnel. (PageID # 15.) Plaintiff has refused to pay a fee for "'chronic care' issues that are ignored by CCS physicians." (PageID # 16.) Dr. Webster has prescribed "Acydovir 5%" for Plaintiff's cold sores, but the medication has had minimal effect. (PageID # 29.)

*Mental Health Care*

Plaintiff alleges a need for psychiatric services as a result of the distress that he has experienced due to the inadequate medical care; wrongful conviction; grievances related to law library access; and the threats, provocation and assaults by a Sergeant Doyle. (PageID ## 26 – 27.) Plaintiff received only one brief counseling session in September 2014. During the session, the social worker with whom he met recommended that he have photographs taken of large sores on his thigh and torso. Plaintiff, however, had no money for photographs. Plaintiff has not received any other counseling sessions. (PageID # 27 – 28.)

*Other*

In 2011, CCS canceled Plaintiff's orders for A&D ointment (for nosebleeds), Lubriskin lotion, and Tylenol. (PageID # 21.) CCS also requires Plaintiff to purchase Tums and Ivory soap. (PageID # 29.) Plaintiff alleges severe headaches following a 2005 head injury during a jail assault. (*Id.*) Ibuprofen resolves the headaches. (*Id.*) Plaintiff is also dissatisfied with the treatment made available for acid reflux. (*Id.*)

*Grievance Review*

Plaintiff alleges that all of his grievances have been ignored by CCS staff and by the Maine State Prison grievance review officer. (PageID # 31.)

*Requested Relief*

Plaintiff requests a declaration that the treatment or lack of treatment has deprived him of his constitutional rights, injunctive relief directing Defendants to provide appropriate treatment, and an award of compensatory and punitive damages. (PageID # 32.)

*Attachments*

Plaintiff filed nine exhibits in support of his complaint. By letter, these are:

A.   August 29, 2014, grievance form alleging refusal to treat staph infections;

B.   April 5, 2011, letter report of treatment by Dr. Robert Dixon, M.D., P.A.;

C.   July 27, 2011, letter report of treatment by Dr. Dixon;

D.   January 26, 2012, letter by Dr. Dixon to inmate advocate suggesting nasal graft surgery;

E.   Print out concerning HHT and Young's procedure;

F.   May 6, 2013, letter by Elisabeth Lamson, Health Services Administrator, regarding grievance dated May 1, 2013, noting that CCS became the contract provider as of July 1, 2012, and offering to authorize receipt of the "YAG procedure"; and January 31, 2014, letter by HSA Lamson, regarding a January 30, 2014, grievance and addressing recent YAG procedures by outside provider;

      G.      September 2, 2014, affidavit subscribed to by Randall Hofland regarding Plaintiff's regular problems with severe nosebleeds, skin rashes, and large boils;

      H.      Notes by Plaintiff related to Dr. Stockwell's instruction in November 2012 that he not scratch his skin; and

      I.      September 12, 2013, Maine State Prison Inside Pass related to medical consult for dry skin.

*Proposed Amendments*

Plaintiff has filed several motions to amend his complaint. Plaintiff filed his first motion on January 14, 2015, requesting leave to add new defendants to the action (ECF No. 27). The Court denied the motion because Plaintiff did not describe the relationship of the proposed defendants to the allegations in the complaint. (ECF No. 28.) Plaintiff "renewed" the motion on February 9, 2015 (ECF No. 33), and again on February 17, 2015 (ECF No. 44). On June 25, 2015, Plaintiff filed a further motion to supplement his pleadings (ECF No. 68). On August 24, 2015, Plaintiff filed yet another motion to supplement his pleadings (ECF No. 84).[5]

In his January 2015 motion to amend (ECF No. 27), Plaintiff stated that he was placed under emergency observation status in December and January after a prisoner refused to allow Plaintiff to be placed with him due to Plaintiff's nosebleeds and skin condition. Plaintiff was then assigned to segregation and subsequently to C-pod. Plaintiff describes C-pod as the unit where the most violent and troublesome prisoners reside. While in C-pod, Plaintiff received threats that he did not receive in general population. Plaintiff also asserted in the motion that he had been unable to access some of his medications and his legal materials for six days. Based on Plaintiff's representations, the Court extended the time for Plaintiff to respond to Defendants' motion to dismiss, but denied the request to amend the complaint, without prejudice, because Plaintiff did not identify a proposed defendant responsible for the issues that he raised. (ECF No. 28.)

---

[5] Motions 33, 44, 68, and 84 are addressed in the discussion that follows.

*Motion for Injunctive Relief*

On July 22, 2015, Plaintiff filed a motion for injunctive relief (ECF No. 75). Through this motion, Plaintiff requests an order from the Court that directs Correct Care Solutions to issue certain medications to Plaintiff in certain dosages and on a "keep-on-person" basis.

### DISCUSSION

**A.      Motion to Dismiss of Correct Care Solutions Defendants (ECF No. 25)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted." In its assessment of the motion, a court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)). To overcome the motion, the plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claim(s) at issue. *Id.*

The Correct Care Solutions Defendants argue that Plaintiff's pleadings fail to state a claim for which relief may be granted. (Motion to Dismiss, ECF No. 25.) Because the deliberate indifference standard governs each of Plaintiff's claims, consideration of Defendants' motion begins with a review of that standard.

*1.      Deliberate indifference standard*

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "From this brief amendment, courts have derived the principles that govern the permissible conditions under which prisoners are held and that establish the medical treatment those prisoners must be afforded." *Kosilek v. Spencer*, 774

F.3d 63, 82 (1st Cir. 2014) (citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)). "Undue suffering, unrelated to any legitimate penological purpose, is considered a form of punishment proscribed by the Eighth Amendment." *Id.* (citing *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).[6]

To succeed on a claim of inadequate or delayed medical care, a plaintiff must satisfy both an objective and a subjective standard. *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011). The objective standard evaluates the seriousness of the risk of harm to health. There must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A medical need is "serious" if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a need for medical intervention. *Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990). The subjective standard concerns the culpability of the defendant. A plaintiff must present evidence that the defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney v. Corr. Med. Servs.*, *Inc.*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)). The focus of the deliberate indifference analysis "is on what the

---

[6] As stated in *Estelle*:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical torture or a lingering death, the evils of most immediate concern to the drafters of the [Eighth] Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.

429 U.S. at 103-04 (internal quotation marks and citation omitted).

8

jailers knew and what they did in response." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002).

Deliberate indifference must be distinguished from negligence. As the First Circuit explained:

> A finding of deliberate indifference requires more than a showing of negligence. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987). A plaintiff claiming an eighth amendment violation with respect to an inmate's serious mental health or safety needs must allege "acts or omissions sufficiently harmful to evidence deliberate indifference." *Estelle*, 429 U.S. at 106; *see also Cortes-Quinone v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988). Although this court has hesitated to find deliberate indifference to a serious need "[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment," *Sires*, 834 F.2d at 13, deliberate indifference may be found where the attention received is "so clearly inadequate as to amount to a refusal to provide essential care."

*Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991).

### 2. *Analysis*

#### a. HHT

Defendants argue that Plaintiff's allegations regarding the denial of care for HHT in fact demonstrate that CCS has been attentive to Plaintiff's needs. In particular, Defendants note that CCS obtained care from a community specialist who has treated Plaintiff's HHT beginning in May 2013. (Motion to Dismiss at 8.) Defendants contend that because Plaintiff's condition was properly assessed and because he was referred for outside treatment by a qualified medical provider, an inference of deliberate indifference is not supported by Plaintiff's allegations. (*Id.*)

As alleged, Plaintiff's HHT symptoms present a serious medical issue. Defendants' arguments regarding the appropriateness of their treatment of the condition are largely dependent on a factual record (e.g., was the referral appropriate) that is not presently before the Court. In

9

addition, particularly given Plaintiff's allegations that Defendants' proposed treatment was entirely inappropriate, and the number of times that he allegedly requested appropriate treatment without success, Plaintiff's description of Defendants' conduct could be construed as deliberate indifference as to Plaintiff's condition.

        *b.*     *Staph*

As to Plaintiff's allegations of untreated staph infections, Defendants argue that Plaintiff's complaint merely amounts to a grievance over "skin lotion options available to him through the CCS formul[ary]." (*Id.* at 4.) Defendants maintain that it is appropriate to charge prisoners for skin lotions. (*Id.* at 5.) Although they acknowledge Plaintiff's allegation that he develops staph sores when he does not have the proper skin lotion (*id.*), Defendants do not otherwise address the Staph diagnosis in their substantive argument. Instead, Defendants contend that Plaintiff has not identified an act that would support a finding of deliberate indifference on the part of any individual and emphasize that Plaintiff received medication for his condition. (*Id.* at 11.)

Plaintiff has alleged that he is prone to developing cracked skin, leading to sores that become infected with MRSA Staph in the Maine State Prison. The presence of MRSA Staph,[7] particularly with an inmate who is predisposed to developing skin sores that become infected with Staph, constitutes a serious condition that requires treatment. Plaintiff's allegations that Defendants deliberately reduced or altered the medication available to him and that Defendants did not reinstate the appropriate medication when his symptoms persisted or returned are sufficient to support the conclusion that a fact finder could find that Defendants acted with deliberate indifference.

---

[7] The lab report that describes the Staph as Methicillin resistant is attached to Plaintiff's Renewed Motion to Amend (ECF No. 33) as Exhibit F (PageID # 223).

      *c.*     *Mental health care*

Plaintiff asserts a need for counseling services due to mental health symptoms and a denial of the services. While health care providers, including those who treat inmates, must be aware of and treat appropriately the mental health needs of their patients, Plaintiff has not alleged sufficient facts to support a finding that he was suffering from a serious mental health condition that required treatment.[8]

      *d.*     *Cold sores*

Plaintiff alleges that he received medication for the cold sores, but he objects to the requirement that he pay $5.00 for the medicine. Plaintiff simply has not asserted any facts that would support a finding that he suffered from a serious medical condition or that Defendants' conduct constituted deliberate indifference.

      *e.*     *Headaches*

Plaintiff maintains that beginning in 2005, he has suffered from severe headaches, that ibuprofen resolves the headaches, and that CCS canceled his prior order of Tylenol after obtaining the contract to provide medical care at the Maine State Prison. Plaintiff also asserts that blood clots associated with his HHT produce headaches. While Plaintiff's complaints of headaches conceivably could be included as part of Plaintiff's HHT claim, the headaches are insufficient to support a separate deliberate indifference claim. Given that Plaintiff acknowledges that the headaches are resolved through use of ibuprofen, Plaintiff has not alleged a serious medical condition.

---

[8] In a motion filed August 5, 2015, Plaintiff states that he now suffers from "very severe post traumatic stress disorder" based on recent interactions with certain corrections officers. (ECF No. 78, PageID # 639.) These new allegations are not part of the claims assessed herein, but are asserted in support of his request that the Court extend the deadline for his response to Defendants' motion to dismiss and his request that the Court appoint counsel, which requests are addressed in a separate order issued on this date. In any event, his claims of PTSD are recent and there are no facts that would support a conclusion that Defendants had the opportunity and failed to treat PTSD.

*f.     Acid Reflux*

Plaintiff alleges a general dissatisfaction with the attention given to his acid reflux symptoms and asserts that he must purchase Tums with his own money. Plaintiff's allegations do not state a plausible claim of deliberate indifference.

*g.     Co-pays for chronic care*

Plaintiff challenges Defendants' requirement that he pay a fee for certain care that he receives. An inmate does not have a constitutional right to receive all services in prison without charge. *Reynolds v. Wagner,* 128 F.3d 166, 174 (3rd Cir. 1997) ("If a prisoner is able to pay for medical care, requiring such payment is not deliberate indifference to serious medical needs. Instead, such a requirement simply represents an insistence that the prisoner bear a personal expense that he or she can meet and would be required to meet in the outside world.") (internal quotation marks omitted). The allegation that Plaintiff had to pay for certain medical care, therefore, does not state, in isolation, a plausible constitutional deprivation.

**B.     Plaintiff's Motions to Amend / Correct Pleadings (ECF Nos. 33, 44, 68, 84)**

Pursuant to Federal Rule of Civil Procedure 15(a)(1), when a party seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the other party's consent or leave of court is required in order to amend the complaint. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend "freely" when "justice so requires." *Id.* Leave may be denied, however, if the record demonstrates undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies through prior amendments, or undue prejudice to the opposing party; or if the proposed amendment is futile because it would not suffice to state a claim. *Foman v. Davis,* 371 U.S. 178, 182 (1962).[9]

---

[9] Plaintiff's requests to amend, to the extent he seeks to add new defendants, is also subject to a preliminary screening review under 28 U.S.C. §§ 1915 and 1915A. When a party is proceeding in forma pauperis, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a

12

Through his February 2015 motion to amend (ECF No. 33), Plaintiff seeks to join Dr. Webster as a defendant because during an August 2014 appointment to attend to Plaintiff's nosebleeds, Dr. Webster refused to examine Plaintiff's multiple staph sores, which were oozing and painful. Plaintiff also wishes to pursue a claim against HSA Lamson,[10] who afforded no relief on his related grievance. Finally, Plaintiff requests leave to add Grievance Review Officer Wendell Atkinson, Warden Rodney Bouffard, and Commissioner Joseph Fitzpatrick, in connection with their failure to act properly in response to Plaintiff's grievances.[11] In February, Plaintiff also filed a pleading ("Amended – Corrected Complaint," ECF No. 44) to clarify that Dr. Dixon was not an intended defendant and that Dr. Hockersmith is an intended defendant.

In his June 25, 2015, motion to amend ("Supplement to Complaint," ECF No. 68), Plaintiff expressed his intention to add as a defendant Robin Cross–Snell, Director of Nursing. Plaintiff asserted that he received orders of the Bactrim antibiotic in November, December and January, 2014 – 2015, for treatment of staph infections, and that "after the antibiotics subdued the staph, more staph sores appeared." (PageID # 486.) Plaintiff received more antibiotics in May 2015, but sores appeared again in June. In response, the nurse declined a request for a "keep-on-person" (KOP) order of antibiotic (but not the antibiotic itself). Plaintiff filed a grievance, which grievance

---

claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). Additionally, because Plaintiff currently is incarcerated and seeks redress from governmental entities and officers, Plaintiff's complaint is subject to screening under the Prison Litigation Reform Act. 28 U.S.C. § 1915A(a), (c). The § 1915A screening requires a court to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim …; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). When considering whether a complaint states a claim for which relief may be granted, courts must apply the standard that applies when determining a motion to dismiss, set forth above.

[10] HSA Lamson is already a defendant.

[11] Plaintiff attached to the motion a September 2014 grievance response by Atkinson stating that staph infection is Plaintiff's own diagnosis, i.e., a condition that CCS had not diagnosed as existing; an October 2014 response by Bouffard agreeing with that determination; a November 17, 2014, response by Fitzpatrick concluding that the lower-level assessments were correct; and a November 20, 2014, lab report finding a staph infection characterized as "moderate growth Methicillin resistant (MRSA)." (ECF No. 33-1.)

HSA Lamson and DoN Cross–Snell signed. (PageID # 488.) According to Plaintiff, Debora Hill, RN, is in charge of the "KOP program." (PageID # 490.) In his initial complaint, Plaintiff named as defendants both Lamson and Hill. Through his latest motion to amend, Plaintiff would add Cross–Snell as an additional defendant.

In his August 24, 2015, motion to supplement (ECF No. 84), Plaintiff once again requests leave to join Dr. Webster as a defendant.

### *1.   Newly proposed Correct Care Defendants*

Plaintiff's motions to amend to extend his care–related deliberate indifference claim to Dr. Webster (ECF No. 33/84) and to Cross–Snell (ECF No. 68) should be granted because he asserts facts that connect these defendants to an otherwise actionable deliberate indifference claim. Plaintiff's allegations regarding Dr. Hockersmith, however, do not. The proposed amendment as to Dr. Hockersmith, therefore, would be futile.

### *2.   Newly proposed Maine State Prison defendants*

Plaintiff also requests leave to join Grievance Review Officer Wendell Atkinson, Warden Rodney Bouffard, and Commissioner Joseph Fitzpatrick, based on their alleged failure to act on Plaintiff's behalf in response to Plaintiff's grievances.

Supervisory prison officials are not liable for acts that violate a prisoner's federal rights absent participation in the acts in question. A plaintiff thus must plead "that each Government–official defendant, through his own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). "Public officials may be held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury 'resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.'" *Ocasio–Hernandez v. Fortuno–Burset,* 640 F.3d 1, 16 (1st

Cir. 2011) (quoting *Rodríguez–García v. Miranda–Marín,* 610 F.3d 756, 768 (1st Cir. 2010)). "Because precise knowledge of the chain of events leading to the constitutional violation may often be unavailable to a plaintiff" at the pleading stage of the litigation," *id.,* courts often must turn to "judicial experience and common sense," *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009), to make "a contextual judgment about the sufficiency of the pleadings," *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 48 (1st Cir. 2009). *See also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("The personal involvement of a supervisory defendant may be shown by evidence that: … the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong ….").

Plaintiff's allegations against Mr. Atkinson suggest only that he reviewed a grievance in his capacity as a grievance review officer. Plaintiff does not assert any facts that would support a finding that Mr. Atkinson had or has any supervisory authority to influence the medical care that Plaintiff receives at the Maine State Prison. In addition, Mr. Atkinson's involvement in the grievance process is insufficient to state a claim against him. *Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) ("[Plaintiff] does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction."); *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (holding that the denial of administrative grievances does not give rise to liability absent evidence of direct participation, encouragement, authorization, or acquiescence in the alleged violation).

A supervisory official, however, can be responsible for failing to address a constitutional violation after the official is informed of the alleged violation. *See Colon v. Coughlin*, 58 F.3d

865, 873 (2d Cir. 1995) ("The personal involvement of a supervisory defendant may be shown by evidence that: … the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong …."). While Mr. Bouffard and Mr. Fitzpatrick allegedly have supervisor responsibilities, Plaintiff has not alleged facts that implicate them in the delivery of medical care to Plaintiff. Instead, Plaintiff seeks to impose liability based solely on the fact that they upheld Mr. Atkinson's assessment that Staph had not been diagnosed by the medical providers. In fact, the lab report upon which Plaintiff relies to support his contention that he suffered from Staph was issued after Mr. Bouffard and Mr. Fitzpatrick acted on Plaintiff's grievance. Consequently, Plaintiff's allegations do not establish that Mr. Bouffard or Mr. Fitzpatrick were deliberately indifferent to Plaintiff's medical needs. [12] Plaintiff's attempt to join them as defendants would be futile.

### C. Plaintiff's Motion for Injunctive Relief (ECF No. 75)

On July 22, 2015, Plaintiff filed a motion for injunctive relief (ECF No. 75). Through this motion, Plaintiff requests an order from the Court that directs Correct Care Solutions to issue certain medications to Plaintiff in certain dosages and on a "keep-on-person" basis. Because Plaintiff has requested injunctive relief in his complaint, through the motion, Plaintiff evidently seeks emergency injunctive relief.

To obtain emergency injunctive relief, Plaintiff must show "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the

---

[12] Plaintiff does not attempt to link these defendants to his claim related to treatment for HHT. Nor does Plaintiff, with respect to any of his medical treatment history, connect these defendants to any prior alleged denial of necessary care, either through his grievance activity or otherwise. Additionally, with respect to ongoing care, Plaintiff's allegations concerning more recent developments (primarily found in his serial requests for injunctive relief) do not suggest that the proper treatment would be obvious even to a layperson. Indeed, Plaintiff's allegations about ongoing care do not mention Bouffard or Fitzpatrick.

public interest." *Nieves–Marquez v. Puerto Rico,* 353 F.3d 108, 120 (1st Cir. 2003); *Hoffman v. Sec'y of State of Me.*, 574 F. Supp. 2d 179, 186 (D. Me. 2008). "The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law." *Holiday Inns of Am., Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). Moreover, "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982).

### 1. *Likelihood of success on the merits*

Although Plaintiff has stated a plausible claim of entitlement to relief, he has not demonstrated a substantial likelihood that he will prevail at trial. Through the affidavit of Robert Clinton, M.D., Defendants argue that the essence of Plaintiff's dispute with Defendants is the proper course of treatment.[13] A difference in medical opinion is generally insufficient to establish deliberate indifference. *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987) ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors."). Because on this record, a fact finder could just as likely conclude that Plaintiff's complaints are grounded in a mere difference of medical opinion, Plaintiff has failed to demonstrate a substantial likelihood that he will prevail.

### 2. *Significant risk of irreparable harm*

Through his declarations, Plaintiff represents that at the present time he is receiving medication and treatment. Without medical testimony to establish that Plaintiff is receiving

---

[13] Second Affidavit of Robert Clinton, MD, ECF No. 79-1; Affidavit of Robert Clinton, MD, ECF No. 49-1.

inadequate care, one cannot conclude that Plaintiff will suffer irreparable harm unless injunctive relief is ordered.

### 3. *Balance of harms*

Plaintiff must also demonstrate that his claimed injury outweighs any harm that granting the injunctive relief would inflict upon Defendants. *Lancor v. Lebanon Hous. Auth.*, 760 F. 2d 361, 362 (1st Cir. 1985). Plaintiff in essence asks the Court to direct Defendants to do what Plaintiff believes would be best for his various medical conditions. Granting such relief would interfere drastically with prison administration and the harm to Defendants would likely be significant. Defendants' authority to exercise professional judgment when providing medical care would be compromised. For that reason, as referenced earlier, "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Rogers*, 676 F.2d at 1214. Plaintiff has not, on the record before the Court, demonstrated that the harm that he would allegedly suffer would outweigh the harm that an injunction would cause Defendants.

### 4. *Public interest*

Plaintiff must prove that "the public interest will not be adversely affected by the granting of the injunction." *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981). Here, the disruption in the administration of the prisons that might occur if an injunction were to issue in this case would likely be contrary to the public interest. Among other things, government resources would be diverted to address the many requests of other inmates for specialized medical treatment that would undoubtedly follow the grant of an injunction in this case. Even if the effect on the public interest was minimal, given Plaintiff's failure to establish any of the other elements

necessary for the grant of an injunction at this stage of the proceedings, a neutral public interest analysis would be insufficient to warrant injunctive relief.

## CONCLUSION

Based on the foregoing analysis, I recommend that the Court:

1. Grant in part and deny in part the Motion to Dismiss of the Correct Care Solutions Defendants (ECF No. 25). Specifically, I recommend that the Court dismiss Plaintiff's claims based on Defendants' treatment of Plaintiff's complaints regarding mental health, headaches, cold sores and acid reflux, and that the Court otherwise deny the motion;

2. Grant in part and deny in part Plaintiff's Renewed Motion to Amend (ECF No. 33). Specifically, I recommend that the Court grant Plaintiff leave to join Dr. Webster and Cross–Snell as defendants, and deny Plaintiff's request to join Mr. Atkinson, Mr. Bouffard, and Mr. Fitzpatrick as defendants;

3. Deny Plaintiff's "Amended–Corrected Complaint" (ECF No. 44) to join Dr. Hockersmith as a defendant;

4. Grant Plaintiff's "Supplemental Pleadings" (ECF No. 68) to permit Plaintiff's claim against Robin Cross–Snell;

5. Deny Plaintiff's Motion for Injunctive Relief (ECF No. 75); and

6. Grant Plaintiff's "Supplemental Pleading" (ECF No. 84), by which Plaintiff reasserts his request to join Dr. Webster as a defendant (ECF No. 33).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, if any is sought, within fourteen (14) days

of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 4th day of September, 2015.